736 N.E.2d 167 (2000)
316 Ill. App.3d 399
249 Ill.Dec. 325
In re M.R., C.R., D.R., M.R., and M.R., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Renee R., Respondent-Appellant).
No. 1-98-2859.
Appellate Court of Illinois, First District, Fourth Division.
August 31, 2000.
Rita Fry, Public Defender of Cook County (Todd Avery Shanker, Assistant Public Defender, of counsel), for Appellant.
Richard A. Devine, State's Attorney of Cook County (Renee Goldfarb, Nancy Grauer Kisicki and Catherine Boyd, Assistant State's Attorneys, of counsel), for Appellee.
Justice BARTH delivered the opinion of the court:
Respondent Renee R. appeals from the trial court's judgment terminating her parental *168 rights as to her five children after finding respondent an unfit parent and finding it in the children's best interest to terminate her rights. On appeal, respondent contends that her right to be present and her due process rights were violated when the trial court conducted the parental fitness and termination hearings in her absence.
In her appeal, respondent does not challenge the evidence presented at the termination hearing or argue that the trial court's decision was against the manifest weight of that evidence, and we therefore briefly review the facts that were presented to the trial court. On June 9, 1998, the date of the termination hearing, respondent's counsel informed the trial court that respondent was in the hospital and under psychiatric care, and counsel requested that the hearing be continued. Respondent's counsel further informed the trial court that the length of respondent's hospital stay was "unknown" and that counsel was "ready to go forward." The trial court denied the request for a continuance, noting that respondent was "ably represented by counsel."
The court heard testimony from a psychiatrist and three caseworkers from the Department of Children and Family Services (DCFS) and Lutheran Social Services. Respondent's case was first referred to DCFS immediately after the birth of her first child, M.R., in March 1985. Later that year, DCFS was awarded custody of M.R. following a determination that the child would be endangered if left in respondent's care. This court affirmed, stating that respondent had not progressed in controlling her reactions to everyday stresses. The court also noted respondent's personality disorder, drug abuse and violent behavior. In re M.R., No. 1-86-2162 (1988) (unpublished order under Supreme Court Rule 23). A second child, C.R., was born in 1986 and removed from respondent's care at birth but was later returned to respondent. Respondent gave birth to a third child, D.R., in 1987, followed by twins, M.R. and M.R., in 1990.
The testimony established that since 1973 respondent had been admitted to psychiatric hospitals approximately 23 times and had been diagnosed with schizoaffective disorder and schizophrenia, for which respondent was prescribed several medications that she sometimes failed to take. Respondent's conditions caused her to be delusional, have hallucinations and exhibit unstable moods and periods of depression. Between 1987 and 1993, respondent lived in at least 20 different locations. Respondent had minimal participation with parenting services offered to her, often starting programs but failing to complete them. The testimony established that respondent would have difficulty caring for her children in the future due to her confused speech and thought processes and her often erratic behavior.
The trial court found respondent unfit as to the State's allegations that respondent (1) failed to maintain a reasonable degree of interest, concern or responsibility as to the minors' welfare; (2) desertion of the children for more than three months; (3) habitual drunkenness or addiction to drugs for at least one year immediately prior to the commencement of the unfitness proceeding; (4) failure to make reasonable efforts to correct the conditions that were the basis of the removal of the children or to make reasonable progress toward the return of the children within nine months after the adjudication; and (5) inability to discharge parental responsibilities due to mental impairment, illness or retardation beyond a reasonable time period. After the best interest phase of the termination hearing, the trial court terminated respondent's parental rights.
On appeal, respondent contends that the trial court's acts of finding her unfit and terminating her parental rights in her absence violated her "statutory right to be present" and her due process rights. Respondent argues that she had been hospitalized for a psychiatric condition and that *169 her attorney was aware that she wanted to be present and wanted the case to be continued.
We initially address the State's contention that respondent's appeal should be dismissed because she challenges the denial of her request that the termination hearing be continued. The State argues that the denial of a motion to continue is not a final and appealable order. However, according to the notice of appeal, respondent's appeal was taken from the judgment of "termination of parental rights." Moreover, respondent's brief addresses alleged violations of her statutory and constitutional rights. We therefore find respondent's appeal properly before this court and will address its merits.
Respondent contends that, as the parent whose rights were being determined, she had a statutory right to be present at the termination hearing, citing section 1-5(1) of the Juvenile Court Act of 1987 (705 ILCS 405/1-5(1) (West 1998)). However, although respondent has such a right, her presence is not mandatory. See In re C.L.T., 302 Ill.App.3d 770, 778, 235 Ill.Dec. 863, 706 N.E.2d 123 (1999).
In determining whether the procedures followed in a parental rights termination proceeding satisfied the constitutional requirements of due process, this court must balance three factors. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); In re C.J., 272 Ill.App.3d 461, 465, 208 Ill.Dec. 833, 650 N.E.2d 290 (1995). The factors outlined in Mathews are: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 334-35, 96 S.Ct. at 902-03, 47 L.Ed.2d at 33. Applying the first factor, respondent's liberty interest in maintaining a parental relationship with her five children cannot be denied. See In re D.R., 307 Ill.App.3d 478, 483, 241 Ill.Dec. 93, 718 N.E.2d 664 (1999); C.J., 272 Ill.App.3d at 465, 208 Ill.Dec. 833, 650 N.E.2d 290.
Regarding the second criterion, it is equally apparent that the procedures used by the trial court in this case offered little or no risk of an erroneous deprivation of respondent's interest in parenting her children. Although respondent was not present at the termination hearing, in light of the testimony as to respondent's psychiatric conditions, respondent's attorney likely represented the interest of respondent to the best degree possible. After respondent's counsel requested the continuance and informed the court that respondent was hospitalized, counsel stated that she was nevertheless "ready to go forward." Respondent's counsel fully cross-examined witnesses and argued respondent's case to the trial court. Contrary to respondent's arguments, the parameters of due process do not include a parent's absolute right to be present at a termination proceeding.
As to the final factor in Mathews, the governmental interest in seeking to adjudicate parental rights also weighs against additional delay in the adjudication of this case. Such delay imposes a serious cost on the functions of government, as well as an intangible cost to the lives of the children involved. See In re D.L., 191 Ill.2d 1, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000). When the trial court inquired, prior to the termination hearing, about respondent's release from the hospital, the public guardian stated that it was a "psych hospitalization" and was "indefinite," to which respondent's attorney responded that the time period of her client's hospitalization was unknown. The court also noted before proceeding with the termination hearing that respondent's case had previously been continued and set for trial at least once since 1996. The Mathews balancing *170 test therefore does not support respondent's claim of a violation of her due process rights.
Respondent likens her case to C.J., in which the Third District Appellate Court held that the trial court violated an incarcerated parent's due process rights by refusing to grant the parent's request to continue the termination hearing for approximately one year, at which time the parent would be out of prison. The parent had alternatively requested that the hearing be continued at the end of the State's evidence so that the parent could review the transcripts and respond to them. C.J., 272 Ill.App.3d at 463, 208 Ill.Dec. 833, 650 N.E.2d 290. The parent was represented by counsel throughout the proceedings. C.J., 272 Ill.App.3d at 464, 208 Ill.Dec. 833, 650 N.E.2d 290. The appellate court found that the State would not have been burdened in allowing respondent a better opportunity to participate in the proceeding, adding that "[t]he exact method of participation is left to the [trial] judge's discretion." C.J., 272 Ill.App.3d at 466, 208 Ill.Dec. 833, 650 N.E.2d 290.
We find C.J. distinguishable from respondent's case. In C.J., when the parent sought a continuance of the termination hearing to allow her to be present, she requested a continuance for a specific period of time, i.e., her date of release from prison, which was set for approximately one year hence. C.J., 272 Ill.App.3d at 463, 208 Ill.Dec. 833, 650 N.E.2d 290. Here, contrary to respondent's assertions, the trial court did inquire how long respondent would be hospitalized, and the public guardian stated that respondent would be in psychiatric care for an "indefinite" period. We note that respondent's counsel did not object to this assertion, but instead added that respondent's status was "unknown at this point." In addition, the parent in C.J., when requesting the continuance, also suggested an alternative manner by which she could participate in the proceedings if they were conducted in her absence. C.J., 272 Ill.App.3d at 463, 208 Ill.Dec. 833, 650 N.E.2d 290. While respondent in this case contends that the court should have "provided a means for her to participate," respondent's counsel did not propose such a method at the time the continuance was requested, nor does counsel offer such a suggestion on appeal.
Respondent also cites People v. Williams, 312 Ill.App.3d 232, 244 Ill.Dec. 666, 726 N.E.2d 641 (2000), in which the First District Appellate Court found that the trial court abused its discretion in denying a defendant the right to be present at his discharge hearing. The court stated that the trial court did not identify evidence to support its statement that the defendant was "disturbed" and lacked the requisite mental state to be present during the hearing. Williams, 312 Ill.App.3d at 233, 244 Ill.Dec. 666, 726 N.E.2d 641.
In contrast to Williams, the record here supports the inference that respondent lacked the capacity to attend the termination hearing because she was in a psychiatric hospital. Furthermore, as previously discussed, respondent's presence was not absolutely required for the termination hearing to proceed.
For all of the foregoing reasons, we therefore find that the trial court did not violate respondent's due process rights by proceeding in her absence.
Accordingly, the judgment of the circuit court is affirmed.
Affirmed.
HOFFMAN, P.J., and SOUTH, J., concur.