In re J.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.P., Respondent-Appellant).

Second District   No. 2—99—1403

Opinion filed October 6, 2000.

654

Donald P. Sullivan, of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

Gary Pumilia, of Rockford, guardian *ad litem*.

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, J.P. (respondent), appeals from an order terminating her parental rights of the minor J.P. and appointing a guardian with the power to consent to J.P.'s adoption. On appeal respondent contends, *inter alia*, that the trial court erred when it accepted her admission that she was unfit for failure to make reasonable progress without requiring the State to present the factual basis for the admission. The trial court also erred when it conducted a best interests hearing in respondent's absence after allowing her counsel to withdraw without complying with the requirements of Supreme Court Rule 13(c) (134 Ill. 2d R. 13(c)). We reverse and remand.

On November 11, 1996, the State filed a neglect petition alleging that J.P. was a neglected minor because he had been born with cocaine in his blood in violation of section 2—3(c) of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS 405/2—3(c) (West 1996)). The trial court subsequently ordered respondent to obtain substance abuse treatment. The matter was continued several times, and on May 21, 1997, the trial court found that J.P. was a neglected minor. The

cause was continued several more times, and on August 25, 1998, the State filed a petition to terminate respondent's parental rights, alleging, *inter alia*, that she failed to make reasonable efforts to correct the conditions that were the basis for the removal of J.P. and that she failed to make reasonable progress toward the return of J.P. The petition also alleged that J.P.'s father was unfit.

On May 5, 1999, the trial court conducted a hearing on the State's petition to terminate respondent's parental rights. At that hearing respondent admitted the allegation contained in the State's petition that she had failed to make reasonable progress. The following discussion was held regarding the admission:

"MR. GOLIAN [special prosecutor]: *** I would like to put it on the record the admission to *** count two of paragraph eight by [respondent] of [J.P.'s] petition.

THE COURT: [Respondent], with regard to [J.P.], the State has advised me that you are in agreement that they could prove the allegations of—

Is it count three or count two?

MR. GOLIAN: Count two.

THE COURT: That from one year of the date that [J.P.] was found to be neglected by this court that you failed to make reasonable progress or reasonable efforts to correct the conditions that caused him to be taken from your care. Have you discussed that with your counsel?

THE RESPONDENT MOTHER: Uh-Huh, yeah.

THE COURT: Is there a stipulation as to that count?

MR. KIEL [respondent's counsel]: Yes, Your Honor.

THE COURT: Then I'll show the stipulation to count two of [J.P.'s] petition by [respondent]."

The trial court subsequently entered an order finding that respondent was unfit, and the cause was continued until August 9, 1999, for a hearing on J.P.'s father's fitness and a best interests hearing. On the same date in a separate proceeding, respondent consented to the adoption of another child, A.L., by his maternal grandmother, respondent's mother.

On June 17, 1999, Roger Kellerman, with the firm of Vella, Sparkman, Wheeler & Lund (the Vella firm), entered an appearance on behalf of respondent in this matter, the adoption of A.L., and in four other juvenile proceedings involving respondent. On August 2, 1999, respondent moved for a continuance. The trial court granted the motion and entered an order that stated in pertinent part:

"Respondent['s] *** motion for a continuance of the best interests hearing set for August 9, 1999 is granted. A new date will be set later. The case remains on the call August 9, 1999 at 9:00 a.m. for unfitness matters."

On August 9, 1999, the trial court conducted a hearing on the father's fitness and found that he was unfit. The report of proceedings indicates that the trial court·set the matter for a best interests hearing on November 8, 1999; the trial court also set a status hearing for A.L.'s adoption on the same date. However, the written order entered indicates that the matter was set for "review" and "status in adoption." The report of proceedings does not indicate that either respondent or her attorney was present at the August 9, 1999, hearing.

On October 8, 1999, the trial court continued the matter until October 21, 1999. The written order entered that day indicates that the matter was continued for "motion to withdraw by attorney Sloan." The trial court also ordered respondent to appear at the next court date. The common-law record also contains a copy of a document entitled "Notice of Hearing Date," indicating that the matter was continued until October 21, 1999. The notice identified the cause as "in the interest of A.L." but also included the case numbers for this matter, the A.L. adoption proceeding, and three other juvenile proceedings. The notice was addressed to respondent but bears only her name and no mailing address. The record does not contain a report of proceedings for the October 8, 1999, hearing.

On October 21, 1999, the trial court heard the motion to withdraw and engaged respondent's counsel in the following colloquy:

"THE COURT: All right. Mr. Sloan. [sic] Last court date we didn't have a green card back on [respondent]. How are we doing in that department? Do you have the green card?

MR. KELLERMAN: No, Your Honor. I spoke to Mr. Sloan just before coming over here and we have lost contact with our client.

THE COURT: With regard to the Motion to Withdraw, I will grant the motion based on lack of cooperation."

The court entered a written order granting the Vella firm leave to withdraw as counsel for respondent. The order stated that respondent was granted 21 days to retain other counsel. The order also stated that the matter remained set for a best interests hearing on November 8, 1999.

On November 8, 1999, the trial court conducted a hearing on the best interests of J.P. The following colloquy occurred before the hearing:

"MR. GOLIAN [special assistant State's Attorney]: Judge, does [respondent] currently have an attorney?

THE COURT: No. She failed to appear on the date set by her counsel, and she was present when this court date was set for hearing on best interests.

MS. KASPER [caseworker]: Yes, she was.

THE COURT: Just to—just to state the procedural posture of the case, I would note that [respondent] was present in court on July 1st when the petition to terminate was set for pretrial conference and hearing was set for August 9th at 1:30.

On August 2nd Attorney Kellerman on behalf of [respondent] came in before the court and asked to continue the best interests hearing on her behalf, indicating that he might be filing a motion to set aside the stipulation ***. *** Such a motion was never filed, and since that time [respondent] has not appeared in court, and ultimately counsel for [respondent] requested to withdraw as counsel based on her lack of cooperation and lack of [sic] failure to remain in contact with counsel, which was heard and granted on our last court date.

We are set this afternoon then for dispositional hearing on best interest [sic] as to [J.P.'s] case. I would find [respondent] to be in default. She's had notice of these termination proceedings, and failure to appear renders her in default and we are able to proceed."

The trial court then conducted the best interests hearing. Donna Kasper, a caseworker for Catholic Charities, testified for the State and testified regarding her contact with respondent as follows:

"Q. Okay. Just for the record, have you had any contact with [respondent] since the last Court hearing?

A. I've had several *** phone conversations with her. I have only met with her once though.

Q. All right. Did you talk to her today?

A. Yes, I did.

Q. What did you say to her today?

A. She called me at 9:30 this morning and stated that she was too sick to come to court. I immediately advised her that no matter how sick she was, that she should come into court today because they would proceed with termination without her. She again said that she was too ill to come in, and I again repeated in front of witnesses that she had to be in court today 'cause they would proceed without her if she did not. She then stated she didn't care, that she would simply file an appeal."

The trial court heard additional testimony from Kasper regarding J.P.'s foster home placement, his relationship with his foster parents, and his developmental progress. The trial court found that it was in J.P.'s best interests that respondent's parental rights be terminated and that a guardian be appointed with the power to consent to adoption. When announcing its judgment the trial court commented:

"Now throughout this case and as documented in the court report that's submitted today, keep in mind [J.P.] was born with cocaine in his system. That was delivered to him by [respondent] through her

ingestion of cocaine, that she used cocaine while she was nursing him, that for a long period of time her substance use has continued, that she has not evidenced to this Court or to any other that she has in any way meaningful [*sic*] addressed her cocaine issues. She's ill today. I'm not sure why. I can make a surmise. I can guess, probably with some accuracy, as to why she is not present today. But regardless of appearances of good care, when someone is addicted to cocaine they cannot be there as a parent for a child, and that's why [J.P.] was initially taken into care."

The trial court subsequently entered a judgment terminating respondent's parental rights and appointed a guardian to consent to adoption. Respondent timely appeals.

Respondent contends that an admission to an allegation of unfitness in a termination of parental rights proceeding is analogous to the entry of a guilty plea in a criminal trial and should be accompanied by procedural safeguards analogous to those provided criminal defendants by Supreme Court Rule 402(c) (177 Ill. 2d R. 402(c)). Rule 402(c) provides that "[t]he court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." 177 Ill. 2d R. 402(c). The State responds that respondent's admission or stipulation should be treated like a settlement agreement in a civil case and that neither the Juvenile Court Act nor the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1998)) requires the admonitions of Rule 402(c). Whether the trial court was required to determine a factual basis before accepting respondent's admission is a legal question that we may review *de novo*. See *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998).

This court recently considered a similar challenge to an admission of unfitness in *In re M.H.*, 313 Ill. App. 3d 205 (2000). The *M.H.* court noted that a termination of parental rights proceeding involves fundamental liberty interests and dire consequences can result if the State succeeds in proving its case. *M.H.*, 313 Ill. App. 3d at 214, citing *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981). Consequently, a parent admitting an allegation of unfitness should be accorded procedural safeguards analogous to those provided a criminal defendant pleading guilty. *M.H.*, 313 Ill. App. 3d at 214. The *M.H.* court concluded:

"In our view, a determination that a factual basis exists for an admission of unfitness is necessary to insure that a parent's admission is knowing and voluntary. Otherwise there is a danger that a parent may understand the State's alleged grounds of unfitness but may not realize that his or her conduct does not fall within those allegations. [Citations.] Because of the dire consequences of a finding of parental unfitness, it is important for the trial court to insure

that an admission of unfitness is made intelligently and voluntarily. The burden on courts of conducting an inquiry into the factual basis for an admission of unfitness will be minimal. As we discuss in more detail below, courts can use a number of different methods to satisfy themselves that an admission has a basis in fact.

In keeping with our analogy to a guilty plea situation, we further hold that the factual basis that is required before the court may accept an admission of unfitness need not rise to the level of the State's burden of proof, which in this case is clear and convincing evidence. See *People v. Nyberg*, 24 Ill. App. 3d 41, 48 (1974) (holding that the quantum of proof necessary to sustain a factual basis for a guilty plea is less than that required to prove a defendant guilty beyond a reasonable doubt at trial). Additionally, the trial court may determine the best method for ascertaining whether a sufficient factual basis exists. We are guided by the committee comments to Rule 402(c), which provide that 'no particular kind of inquiry is specified; the court may satisfy itself by inquiry of the defendant or the attorney for the government, by examination of the presentence report, or by any other means which seem best for the kind of case involved.' 177 Ill. 2d R. 402(c), Committee Comments, at lxxvii. Whatever the method, though, in our view a trial court cannot determine whether a parent made reasonable progress toward the return of his or her children without first knowing the goals the parent was supposed to work toward and what efforts, if any, the parent made toward reaching those goals." *M.H.*, 313 Ill. App. 3d at 215.

In the case before us, the record does not indicate that, at the time the trial court accepted respondent's admission, it had before it any facts supporting the State's allegation that respondent failed to make reasonable progress. The count in the State's petition to terminate parental rights to which respondent admitted merely repeated the statutory definition of unfitness found in the Adoption Act. See 750 ILCS 50/1(D)(m) (West 1998). The State did not identify what goals were assigned respondent or the efforts, if any, she made toward reaching those goals. The State presented no additional facts at the time of the admission. Therefore, we conclude that respondent's admission lacked a factual basis and accordingly vacate her admission. See *M.H.*, 313 Ill. App. 3d at 216. Without respondent's admission, there is no evidence in the record to support the trial court's finding that she was unfit. Accordingly, we reverse the order finding respondent unfit and the subsequent order terminating her parental rights, and we remand the cause for a new hearing to determine whether respondent is unfit to parent J.P.

Respondent also contends that the trial court erred when it

conducted the November 8, 1999, best interests hearing in her absence. This contention subsumes two interrelated issues: (1) whether the trial court's action deprived respondent of her right to counsel, and (2) whether due process required respondent's presence at the hearing. Our determination regarding respondent's admission of unfitness obviates the need to address this contention on appeal. However, because similar issues may arise again on remand, we will address them briefly at this time.

A respondent parent has a right to the effective assistance of counsel in both a neglect proceeding and in any subsequent termination of parental rights proceeding that might arise from the underlying finding of neglect. *In re Kr. K.*, 258 Ill. App. 3d 270, 280 (1994). This right to counsel flows from the fourteenth amendment to the United States Constitution as well as from Illinois statutes. *Kr. K.*, 258 Ill. App. 3d at 279; see also U.S. Const., amend. XIV; 705 ILCS 405/1— 5(1) (West 1998). Supreme Court Rule 13(c)(2) prevents an attorney from withdrawing without leave of the court and requires notice to the client. 134 Ill. 2d R. 13(c)(2). The entry of a default judgment or other order in the absence of a party who was not given proper notice under Supreme Court Rule 13 is unjust, and the judgment may be vacated or reversed on appeal. *In re Marriage of Santa Cruz*, 179 Ill. App. 3d 611, 621 (1989); see also *Safety-Kleen Corp. v. Canadian Universal Insurance Co.*, 258 Ill. App. 3d 298, 304 (1994).

In this case, the record contains no indication that respondent's counsel complied with the minimal requirements of Rule 13. Rule 13(c)(3) requires that any motion to withdraw be in writing and contain the last known address of the party represented. 134 Ill. 2d R. 13(c)(3). The record on appeal contains no such motion. Rule 13(c)(2) requires counsel to provide notice of a motion to withdraw to the party represented by personal service or certified mail at the party's last known address. Although the common-law record does not contain a copy of a motion to withdraw or notice of that motion, the report of proceedings for October 21, 1999, suggests that any attempt to notify respondent by certified mail was unsuccessful. Counsel for respondent indicated that his firm had lost contact with respondent. However, respondent's caseworker, Kasper, testified that respondent had remained in contact with her. This testimony suggests that respondent's attorney could have, with reasonable effort, located his client to provide notice of the motion to withdraw. Rule 13(c)(4) requires that a copy of the order granting an attorney leave to withdraw be served upon the client within three days. The record on appeal contains no indication that counsel for respondent attempted to serve her with a copy of the order granting him leave to withdraw. Finally, Rule 13

contemplates that a client will be granted at least 21 days to appear *pro se* or retain substitute counsel. See 134 Ill. 2d Rs. 13(c)(2), (c)(5). Although the order granting respondent's counsel leave to withdraw recites the required 21-day period to obtain substitute counsel, the order also indicates that the matter remained set for hearing on a date only 18 days after the order was entered. In short, there is no indication that counsel for respondent complied with any of the requirements of Supreme Court Rule 13.

In this case the right-to-counsel issue is interrelated with the issue of whether due process required respondent's presence at the best interests hearing. Although a parent has a right to be present at a hearing to terminate parental rights, presence is not mandatory, and the trial court is not obligated to delay the proceedings until the parent chooses to appear. *In re C.L.T.*, 302 Ill. App. 3d 770, 778 (1999). In *C.L.T.*, the respondent mother failed to appear at a hearing on a petition to terminate her parental rights, and the trial court denied her attorney's request for a continuance. *C.L.T.*, 302 Ill. App. 3d at 779. The reviewing court observed that the mother had received notice of the hearing date through her attorney; that a caseworker contacted the mother the date of the hearing, reminded her of the court date, and offered the mother a ride; and that the mother's attorney represented her at the hearing in her absence. *C.L.T.*, 302 Ill. App. 3d at 778-79. The reviewing court concluded that the trial court did not abuse its discretion or deny the mother her right to due process when it denied the continuance. *C.L.T.*, 302 Ill. App. 3d at 779.

When evaluating whether due process requires a trial court to continue the proceedings in a termination case, a reviewing court may consider the governmental interests affected by a delay in the proceedings. *In re M.R.*, 316 Ill. App. 3d 399, 402 (2000). In a termination proceeding, delay imposes a serious cost on the function of government, as well as intangible costs to the lives of the children involved. *M.R.*, 316 Ill. App. 3d at 403. These considerations are so important that, even if her or his absence from the hearing is involuntary, a parent's right to due process is not violated when the conditions preventing the parent's presence are likely to continue indefinitely. *M.R.*, 316 Ill. App. 3d at 403 (holding that the trial court did not err when it denied a continuance to a mother confined to psychiatric hospital when her interests at the termination hearing were represented by counsel).

In this case, the record does not support a finding that respondent had adequate notice of the best interests hearing. Although the trial court stated that respondent was present in court when it set a date for the best interests hearing, the record does not support the

trial court's assertion. The report of proceedings for August 11, 1999, contains no indication that respondent was present and clearly indicates that her attorney was not present when the trial court set November 8, 1999, as the date for the best interests hearing. Because respondent's attorney indicated that he had lost contact with respondent, we cannot presume that notice to her attorney was communicated to respondent. *Cf. C.L.T.*, 302 Ill. App. 3d at 778 (holding that notice to counsel was a reasonable means of providing notice to the mother). Kasper's testimony suggests that respondent was aware that the best interests hearing was scheduled. However, we do not find this statement to Kasper sufficient to establish that notice of the hearing was provided by reasonable means or that respondent's absence constituted a voluntary relinquishment of her due process rights.

More importantly, unlike *M.R.* and *C.L.T.*, respondent's interests were not represented by counsel at the hearing. This lack of representation is particularly significant in light of the failure to comply with the requirements of Supreme Court Rule 13. We conclude that the trial court erred when it granted respondent's counsel leave to withdraw without requiring compliance with Supreme Court Rule 13 and that the trial court compounded this error when it conducted the best interests hearing in respondent's absence. Although the decision to continue a juvenile proceeding is a matter committed to the trial court's discretion, and this court appreciates the trial court's efforts to conclude this matter to insure J.P.'s stability, the combination of errors in this case deprived respondent of her right to due process. Therefore, the trial court's decision to conduct the hearing in respondent's absence constituted an abuse of that discretion.

We also note that the trial court stated that its ruling on the best interests of J.P. was based, in part, on respondent's addiction to cocaine and her failure to address her addiction. A trial court's determination of whether a parent is unfit and whether the termination of parental rights is in the child's best interest must be based only on evidence properly admitted during the termination-of-parental-rights proceedings. See *In re A.B.*, 308 Ill. App. 3d 227, 239 (1999); *In re J.G.*, 298 Ill. App. 3d 617, 629 (1998). In this case, no evidence was presented during the best interests hearing that respondent was addicted to cocaine. Further, because the trial court did not make a determination regarding the factual basis for respondent's admission, her admission of unfitness provides no support for the trial court's conclusion that she is addicted to cocaine. The record does suggest that respondent is addicted to cocaine, and we presume that the trial court's assertion was based on its knowledge of the underlying proceedings. However, during a typical proceeding to terminate parental rights, a

trial court will likely receive various service plans and reports that may contain information that is hearsay or otherwise inadmissible. *J.G.*, 298 Ill. App. 3d at 628-29. Wholesale judicial notice of all matters occurring prior to the unfitness hearing is unnecessary and inappropriate, and a trial court should only take judicial notice of those portions of the underlying court files that have been proffered by the State and to which the respondent is given an opportunity to object. *A.B.*, 308 Ill. App. 3d at 238-39; *J.G.*, 298 Ill. App. 3d at 629. Therefore, the trial court erred when it considered respondent's alleged addiction in its best interests determination, and on remand we caution the trial court to limit its consideration to the evidence presented to it and properly admitted.

Finally, we wish to address some issues related to respondent's conduct. We cannot, on the record before us, make a definitive finding regarding respondent's mental state. However, if true, respondent's statement to Kasper that she did not care whether the trial court conducted the best interests hearing in her absence because she could simply appeal the ruling suggests that respondent possessed a sufficient understanding of termination procedures to manipulate the system to her advantage. Few legal procedures exist that are incapable of abuse, regardless of the efforts of the judiciary, by those who place their own interests ahead of the concerns of justice and fairness. See *In re Marriage of Thomas*, 89 Ill. App. 3d 81, 84 (1980). A respondent parent who wished to delay an unfitness finding could certainly do so by refusing to cooperate with counsel or failing to appear in court at strategic times. When the alleged unfitness is the result of mental illness or drug addiction, similar delays may occur without a conscious effort on the parent's part. See *M.R.*, 316 Ill. App. 3d at 403. A child's need for stability is significant and weighs heavily in favor of the swift determination of allegations of parental unfitness. *M.R.*, 316 Ill. App. 3d at 403. Accordingly, a trial court should not hesitate to determine fitness in the absence of a parent who is attempting to manipulate the system to her or his own advantage. See *C.L.T.*, 302 Ill. App. 3d at 778. However, when balancing a parent's interests and right to due process against the interests favoring a prompt disposition, a trial court must cautiously observe the relevant procedural requirements because a disposition that must be reversed on appeal serves neither interest.

In conclusion, we hold that the trial court erred when it accepted respondent's admission of unfitness without determining that a factual basis existed for the admission in a manner analogous to that required by Supreme Court Rule 402(c) for guilty pleas in criminal cases. Accordingly, we vacate respondent's admission of unfitness, reverse the

order terminating her parental rights, and remand the cause for further proceedings consistent with this order.

Reversed and remanded.

INGLIS and RAPP, JJ., concur.