# Illinois Official Reports

## Appellate Court

---

### *In re M.B.*, 2019 IL App (2d) 181008

---

| | |
|---|---|
| Appellate Court Caption | *In re* M.B., D.B., and D.B., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Maurice B., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-18-1008 |
| Filed | May 6, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, Nos. 17-JA-35, 17-JA-36, 17-JA-37; the Hon. Francis M. Martinez, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Andrew J. Vella, of Rockford, for appellant.<br><br>Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, David J. Robinson, and Cora Moy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices McLaren and Hudson concurred in the judgment and opinion. |

¶ 1      On November 13, 2018, the circuit court of Winnebago County found that the State had established by clear and convincing evidence that respondent, Maurice B., was unfit to parent his children, M.B., D.B., and D.B. (ages three, six, and eight at the time of the hearing) and that it was in the children's best interests that respondent's parental rights be terminated. Respondent appeals, arguing that the court's findings that he was unfit and that termination was in the children's best interests are contrary to the manifest weight of the evidence and, further, that his due process rights were violated when the court vacated his attorney's appointment before the unfitness hearing. As we agree with respondent's due process argument, we vacate the court's judgment and remand.

¶ 2      I. BACKGROUND

¶ 3      In January 2017, the Department of Children and Family Services (DCFS) was called to respondent's home after his two-month-old infant's death was reported. (The pathologist concluded that the infant's cause of death was suffocation upon co-sleeping.) Respondent and Doneisha T., the children's mother,[1] reportedly gave varying accounts of the events leading to the death, and the three other children were told not to talk to DCFS. After an investigation revealed multiple reports of domestic violence between respondent and Doneisha and police found 30 bags of marijuana in the residence, DCFS took protective custody of the children.

¶ 4      On August 1, 2017, the children were adjudicated neglected. The report of proceedings reflects seven hearings between February 2, 2017, and August 7, 2017; respondent was present at four of the hearings and his appointed counsel was present at all of them. During a hearing at which respondent was not present, the court learned that respondent's counsel had not had any contact with respondent since the previous court date and that respondent had missed appointments with the caseworker; as such, the court found that respondent forfeited his right to be present at the hearing.

¶ 5      On September 28, 2017, the court held a dispositional hearing. Respondent was present with counsel. The court reminded respondent that he must cooperate and make reasonable progress or the State had could petition to terminate his parental rights. A permanency hearing was scheduled.

¶ 6      At the February 28, 2018, permanency hearing, respondent was present with counsel. However, at the next permanency hearing, on August 10, 2018, respondent was not present. Counsel reported that she had not had any recent contact with respondent. The court noted that there was an outstanding warrant for respondent's arrest. The court continued the hearing to August 22, 2018.

¶ 7      On August 22, 2018, neither respondent nor Doneisha appeared, and their respective attorneys reported that they had not had any contact with them. A caseworker represented that she believed that they were in Chicago, that they had missed their last scheduled visit, and that respondent had an outstanding warrant. Doneisha's attorney stated that Doneisha had expressed a wish to move the case to Chicago because the entire family was there. The court

---

[1]Doneisha was a party to the trial court proceedings, and her parental rights were also terminated. She is not, however, a party to this appeal.

confirmed, however, that the children were not placed in Chicago. The court further learned that respondent had been discharged from counseling and substance-abuse services because he committed, and was convicted of, aggravated battery of Doneisha and was incarcerated. The court commented, "I think I arraigned him during this period in bond court. I seem to have run into him once or twice." Further, respondent was required to have only supervised visitation but had engaged in unsupervised contact with the children. The court changed the goal to substitute care pending termination of parental rights and set an arraignment date, finding:

> "[Respondent] was convicted of aggravated battery against the mother. He currently has a warrant outstanding. He is a fugitive from justice. He has failed to appear here in court, and is at this point, as [the guardian *ad litem*] says, no closer to reunification than he was the day we entered the disposition, in the Court's opinion. Therefore, he has not made reasonable progress at this time nor efforts."

¶ 8    On September 25, 2018, the court held an arraignment on the petition to terminate parental rights. Respondent was not present. The court noted that respondent had, from time to time, been in custody, and it inquired as to respondent's status. Regarding her efforts to contact respondent, counsel stated:

> "I attempted to contact him by every phone number that I have on file. I don't have an up-to-date address to reach him at. The last I knew from [the previous caseworker,] he had relocated to Chicago, and I did not have a Chicago address for him.
> ***
> So I have not had contact with him for some time."

Doneisha and the caseworkers also represented that they had not had contact with respondent and/or did not know whether respondent had relocated. The court found that respondent had forfeited his right to be present at the hearing.

¶ 9    On November 6, 2018, the unfitness hearing commenced. Respondent was not present. His counsel was present and reported that she had not had any contact with him. The court, recollecting the outstanding warrant, questioned whether respondent was in custody and asked the assistant state's attorney to check "our jail." After a discussion off the record, the assistant state's attorney reported that respondent was not in custody in Winnebago County. The court made the following findings:

> "Parents have not communicated with their attorneys and have not taken advantage or assisted them in the preparation of this case for termination. They have indicated that they are not inclined to participate in this termination of parental rights. They are now—they have not assisted their attorneys in preparation for this termination of parental rights, so I'm going to *vacate their appointments*. Both counsels were previously appointed, are not retained. And then we will proceed with the [termination of parental rights] essentially as a prove up.
>
> *** [T]he findings are quite clear that they've waived their right to be present, and they've waived their right to counsel because they have not cooperated with counsel in the preparation, counsel's preparation of this case." (Emphasis added.)

¶ 10    Accordingly, respondent's counsel was discharged and did not participate further in the proceedings. Thereafter, the State presented the children's current caseworker, who laid the foundation for the admission of service plans, and the court admitted additional documentary evidence and received argument from the State and the guardian *ad litem*. The court found that

the State proved by clear and convincing evidence that respondent was unfit on both bases alleged in the petition: (1) failing to protect the children from conditions within their environment injurious to their welfare (750 ILCS 50/1(D)(g) (West 2016)) and (2) failing to make reasonable progress toward the return of the children within any nine-month period after the neglect adjudication (*id.* § 1(D)(m)(ii)). The court again noted that the parents had "absented themselves from these proceedings without excuse." The court also noted that respondent had failed to complete services necessary for reunification, that respondent had not made progress toward unsupervised visitation, and that respondent had presented no evidence to contradict the State's case.

¶ 11    The case immediately proceeded to a best-interests hearing, again without respondent or his counsel present. The caseworker testified that the children were split between two traditional foster homes (the oldest in one, and the other two in another) and had been in those homes for approximately two months. The foster homes were safe and appropriate, the children were comfortable in them, and the foster parents were providing for the children's needs. The foster parents were not yet sure whether they would be willing to adopt the children, as the placements were relatively new. The court found that it was in the children's best interests to terminate both parents' parental rights. It noted that "both parents are still unfit, and reunification with those parents is certainly bleak to say the least."

¶ 12    The record does not reflect when or how respondent was notified of the court's decision, but, on December 5, 2018, respondent, *pro se*, filed a timely notice of appeal.

¶ 13                                  II. ANALYSIS

¶ 14    We find dispositive respondent's contention that his due process rights were violated when the trial court dismissed his appointed counsel before the unfitness hearing. Respondent notes that his counsel was present and prepared to participate in the hearing, that conducting the hearing would not have been a great burden to either counsel or the State, and that counsel could have cross-examined the caseworker and made arguments on respondent's behalf.[2] For the following reasons, we agree.

¶ 15    The due process clause of the United States Constitution provides heightened protection against government interference with parents' fundamental rights, including their right to make decisions concerning the care, custody, and control of their children. *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). In limited instances, however, State interference with fundamental parental rights is justified to protect the health, safety, and welfare of children. *Id.* at 317. "Due process in the context of interference with parental rights is achieved by compliance with the provisions of the Juvenile Court Act [of 1987] and fundamental fairness." *In re D.T.*, 2017 IL App (3d) 170120, ¶ 23. We review *de novo* claims concerning due process violations. *In re A.M.*, 402 Ill. App. 3d 720, 723 (2010).

---

[2]We note that respondent's brief dedicates one paragraph to this issue (and he did not file a reply brief). Respondent provides a few relevant citations, but instead of presenting a fully developed argument, he concludes simply that "it is clear" that his due process rights were violated. His arguments on the remaining issues are similarly abbreviated. We remind respondent that this court is entitled to cohesive arguments and is not simply a repository into which an appellant may foist the burden of argument and research. See, *e.g.*, *In re Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 69.

¶ 16    Although a respondent parent has no constitutional right to counsel in proceedings under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2016)), the parent has a statutory right to counsel. Specifically, as relevant here, section 1-5(1) of the Act (*id.* § 1-5(1)) provides that a respondent parent has the right to be present at the proceedings and to the appointment of counsel (if he or she is financially unable to employ counsel). That section further provides:

> "Counsel *** shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental rights proceedings *subject to withdrawal* or substitution *pursuant to Supreme Court Rules or the Code of Civil Procedure*. Following the dispositional hearing, the court may *require* appointed counsel *** to *withdraw* his or her appearance upon failure of the party for whom counsel was appointed under this Section to attend *any* subsequent proceedings." (Emphases added.) *Id.*

¶ 17    Here, although the trial court did not reference section 1-5 of the Act, the parties view the court as having implicitly relied on section 1-5's option to "require" appointed counsel's withdrawal. Under this framework, we cannot conclude that the court erred in determining that, as respondent had failed to appear at multiple hearings following the dispositional hearing, requiring counsel's withdrawal was permitted by the Act.

¶ 18    However, and as the State concedes, the court did not follow the statute's procedures, which provide that, although the court may require an attorney to withdraw, the withdrawal must follow "Supreme Court Rules." *Id.* Illinois Supreme Court Rule 13(c) (eff. July 1, 2017) provides that counsel must submit a written motion to withdraw and provide notice to the represented party by personal service or certified mail before withdrawal is allowed. Further, after withdrawal is allowed, Rule 13(c) establishes a 21-day period for the party to retain new counsel or enter his or her own appearance. As there was no written motion, service, or continuance here, the court erred in dismissing counsel.

¶ 19    The State argues that, despite the Rule 13(c) violations, respondent's due process rights were not infringed. The State contends that any error was harmless, given the strength of the evidence and respondent's decision to absent himself from proceedings. We disagree.

¶ 20    When determining what due process requires in proceedings that implicate a fundamental liberty interest, three factors must be considered: (1) the private interest implicated by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003) (same factors apply to assess due process under Illinois Constitution). These factors have been applied in cases concerning termination of parental rights. See *Andrea F.*, 208 Ill. 2d at 165.

¶ 21    As to the first factor, the private interest at stake is respondent's fundamental interest in the control, custody, and care of his children.

¶ 22    As to the second factor, we cannot conclude that there is only a minimal risk that the court's error erroneously deprived respondent of his fundamental interest. Indeed, respondent's interest was completely unrepresented at the termination hearings, as he was absent and his counsel was discharged. The State argues that any error was harmless because the proceedings to terminate respondent's parental rights arose due to respondent's own acts or omissions,

namely his objective failure to make reasonable progress toward the return of his children. Therefore, the State argues, as reasonable progress could be objectively determined from the record, respondent's lack of representation did not affect the court's finding of unfitness. Similarly, the State argues, the court's best-interests finding could not have been affected by the absence of respondent's counsel, as the evidence reflected that the children could not be returned to respondent's care in the near future and were being adequately cared for in their foster placements.

¶ 23    Of course, the objective evidence the State references was not subject to cross-examination by respondent or his counsel at the proceedings. As respondent's appellate counsel noted at oral argument, we do not know what arguments counsel might have made, what evidence might have been presented, or what questions might have been asked of the State's witness had counsel not been discharged. Accordingly, while it is easy to argue that the record objectively supported the court's findings, it remains that the court was not presented with "both sides" of that record. Thus, to the extent that the State suggests that there can be no due process violation here simply because the case was ultimately a "slam dunk" for the State, we disagree. "At a minimum, procedural due process requires notice, an opportunity to respond, and a meaningful opportunity to be heard." *In re Estate of Gustafson*, 268 Ill. App. 3d 404, 409 (1994). Where there was no notice to respondent of the unfitness hearing and no notice that his counsel would be discharged—and accordingly the State's evidence was uncontested—we cannot say that the Rule 13(c) violations were harmless and did not infringe due process.

¶ 24    We acknowledge that, in the recent decision *In re S.P.*, 2019 IL App (3d) 180476, ¶¶ 43-44, the Third District held that, despite Rule 13(c) violations, allowing the respondent father's counsel to withdraw did not constitute a due process violation. Specifically, counsel orally requested to withdraw when the respondent failed to appear and counsel had not had any contact with him in almost one year, and the trial court granted the request. The appellate court held that, because counsel did not follow Rule 13(c), the trial court erred in allowing counsel to withdraw. Nevertheless, the appellate court held that the error did not constitute a due process violation, as the risk that the respondent was erroneously deprived of his fundamental right to parent was minimal. *Id.* ¶ 44. The court recounted that the record showed that the respondent (1) had appeared at the adjudication and dispositional hearings and thus was aware of the proceedings, (2) had received a service plan, (3) had been admonished to comply with the terms of the service plan or risk termination of his parental rights, (4) had failed to make himself available to the caseworker, (5) had failed to remain in contact with counsel, and (6) was incarcerated while counsel was withdrawn and there was no indication that the respondent attempted to contact counsel for any reason, let alone for advice or assistance regarding making progress. *Id.*

¶ 25    Each of the foregoing six factors is also present here.[3] However, there are two critical distinctions. First, in *S.P.*, the court also noted that the only proceedings that took place while the respondent was without counsel concerned the mother's progress. *Id.* Here, in contrast, the proceedings that occurred in respondent's and counsel's absence were those most critical to

---

[3]As to the sixth circumstance, incarceration, it is not entirely clear, but it appears that there was an outstanding warrant for respondent's arrest and that respondent was incarcerated for a period. In any event, he certainly did not reach out to counsel for assistance with making reasonable progress or to advise counsel of his whereabouts.

respondent's parental rights, *i.e.*, the termination proceedings. Second, in *S.P.*, after counsel was allowed to withdraw, the respondent reappeared in court at a subsequent hearing and, after the court admonished him to keep in contact with counsel, it reappointed counsel. As such, the respondent was fully represented at the termination hearings. *Id.* Here, there was no opportunity for respondent to reappear or for counsel to be reappointed, as there was no notice of counsel's dismissal and no continuance of the case. Rather, the court vacated the appointment and dismissed counsel *at* the unfitness hearing, outside of respondent's presence, and he lacked any representation at the termination hearings. Accordingly, this case lacks two critical facts that allowed the court in *S.P.* to find that the Rule 13(c) violations resulted in only a minimal risk of an erroneous deprivation of rights. Under these facts, we find *S.P.* distinguishable.

¶ 26    We instead find instructive *In re Robert S.*, 357 Ill. App. 3d 214 (2005). Although not in a due process framework, the court in *Robert S.* held that the trial court erred by granting the attorney's motion to withdraw and then immediately conducting hearings on the termination petition. *Id.* at 218. The respondent had received notice of the attorney's motion (unlike here), and the notice advised the respondent that if withdrawal were granted she would have 21 days to secure new counsel or file an appearance. As the court instead granted the motion to withdraw and immediately conducted hearings on the petition, Rule 13(c) was violated and the respondent was neither present nor represented by counsel at the termination proceedings. The appellate court held that the error required reversal and a remand. *Id.*

¶ 27    We also find instructive *In re J.P.*, 316 Ill. App. 3d 652, 663 (2000), wherein this court concluded that a respondent's due process rights were violated when the trial court conducted the best-interests hearing in the absence of both the respondent and her counsel, who was allowed to withdraw without Rule 13(c) compliance. We reversed the order finding the respondent unfit and the subsequent order terminating her parental rights, and we remanded the cause for a new hearing to determine whether the respondent was unfit. *Id.* at 659.

¶ 28    We are not immune to the frustration caused by respondent's absence. Indeed, after the dispositional hearing, respondent was not only absent from four out of the five remaining hearings—his whereabouts were *completely unknown*. Respondent had no contact with his counsel or the caseworker. Doneisha did not know where he was. Counsel tried to reach him on every phone number that she had, to no avail, and she had no current address for him. *Ten months* passed between respondent's last court appearance and the court's dismissal of counsel; thus, respondent was absent for approximately two-thirds of this case. (The entire proceedings, from the neglect adjudication (August 2017) through termination (November 2018), took place over approximately 15 months.) When present in court, respondent was routinely admonished that his cooperation and reasonable progress were required or he risked termination of his parental rights. Nevertheless, without excuse, respondent absented himself from these proceedings and from contact with counsel. We note that, even on appeal, respondent offers no explanation or excuse for his absences and his failure to contact or cooperate with either counsel or the caseworker.

¶ 29    However, respondent *was* an active participant in the process prior to the dispositional hearing. The timing of respondent's absences appears to coincide with criminal issues and an outstanding warrant, perhaps suggesting fear that a court appearance would result in an arrest. Setting aside that speculation, it is objectively true that respondent's *counsel* was present at every single hearing. It is not unreasonable to presume that respondent might have absented

himself with the understanding that, even when he was not present, his counsel *would* be present and that, if counsel were to withdraw, respondent would receive notice. Indeed, as that is, in fact, what section 1-5(1) of the Act and Rule 13(c) collectively provide, that presumption would be reasonable.

¶ 30  As to the third and final due process factor, the State contends that, had the termination proceedings been further delayed upon the court's decision to dismiss counsel, the State's interest would have been burdened. Without minimizing the importance of efficiency and finality in these cases, we do not agree that any such burden on the State would have been great. A little over one month passed between the September 25, 2018, arraignment on the termination petition and the November 6, 2018, termination proceedings. One 21-day continuance to comply with Rule 13(c) would not have been onerous. Moreover, we emphasize that, if the burden of delay was the overarching concern, a reasonable alternative existed: as counsel was already present for the hearing, the court could have simply proceeded, leaving counsel's appointment intact. Again, counsel here did not request to withdraw. The court acted *sua sponte*. Instead of doing so, the court could have found that respondent forfeited only his statutory right to be present and it could have proceeded, with counsel, in his absence. See, *e.g.*, *id.* at 661 ("[a]lthough a parent has a right to be present at a hearing to terminate parental rights, presence is not mandatory, and the trial court is not obligated to delay the proceedings until the parent chooses to appear" and "even if her or his absence from the hearing is involuntary, a parent's right to due process is not violated when the conditions preventing the parent's presence are likely to continue indefinitely"). Under these facts, proceeding in respondent's absence, but leaving intact counsel's appointment, would have also alleviated the State's concern that a respondent parent who wishes to delay an unfitness or best-interests finding could do so by refusing to cooperate with counsel or failing to appear in court at strategic times. We reiterate:

> "[A] trial court should not hesitate to determine fitness in the absence of a parent who is attempting to manipulate the system to her or his own advantage. [Citation.] However, when balancing a parent's interests and right to due process against the interests favoring a prompt disposition, a trial court must cautiously observe the relevant procedural requirements because a disposition that must be reversed on appeal serves neither interest." *Id.* at 663.

¶ 31  Unfortunately, neither a continuance nor a retention of counsel's appointment was chosen here and, consequently, the court's action, taken presumably in the name of efficiency and finality, has, regrettably, resulted in the opposite: delay, inefficiency, and uncertainty. As due process in the context of interference with parental rights is achieved by compliance with the provisions of the Act and fundamental fairness (*In re D.T.*, 2017 IL App (3d) 170120, ¶ 23), neither of which was satisfied here, we vacate the court's judgment and remand for proceedings consistent with this decision.

¶ 32                                III. CONCLUSION

¶ 33  For the foregoing reasons, the judgment of the circuit court of Winnebago County is vacated and the cause is remanded.

¶ 34  Vacated and remanded.