NOTICE
Decision filed 12/10/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250550-U

NOS. 5-25-0550, 5-25-0551, 5-25-0552 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* AIDEN M., SOPHIA M., and KHAI B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Piatt County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 21-JA-16, 21-JA-17, |
| | ) | 22-JA-31 |
| | ) | |
| Amanda W., | ) | Honorable |
| | ) | Dana C. Rhoades, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the trial court finding it was in the minors' best interest to terminate Mother's parental rights is reversed where the State presented no evidence at the best-interest hearing aside from the best-interest report, which the State failed to properly admit into evidence.

¶ 2    The respondent, Amanda S. (Mother),[1] appeals the Piatt County circuit court's June 30, 2025, orders[2] finding it was in the best interest of Aiden M., Sophia M., and Khai B. for her parental rights to be terminated. Mother raises one issue on appeal: whether the State failed to meet

---

[1]Corey M. is the father of Aiden M. and Sophia M. and is a party to 21-JA-16 and 21-JA-17. He is not a party on appeal, and his parental rights were terminated on June 30, 2025. No purported father has been identified for Khai B. (22-JA-31).

[2]The respondent filed separate appeals in each of the children's cases. This court subsequently entered an order consolidating the appeals.

its burden of proving termination was in the children's best interest, as the State failed to present any properly admitted evidence at the best-interest hearing. For the following reasons, we reverse.

¶ 3                                    I. BACKGROUND

¶ 4      Following the filing of a motion to terminate Mother's parental rights as to all three minors, Mother stipulated to the finding of unfitness. Accordingly, whether Mother was unfit is not before this court on appeal, and we limit our statement of facts to those necessary to resolve the issue raised at the best-interest hearing.

¶ 5      This case began with the filing of petitions for adjudication of neglect on October 8, 2021, after Sophia M., who was born in late August 2013, and Aiden M., who was born in mid-October 2016, were taken into protective custody on October 6, 2021, due to allegations of neglect. The petitions alleged that both minors were neglected due to an environment injurious to their welfare based upon exposure to substance abuse and domestic violence. On October 11, 2022, the State filed a petition for adjudication of neglect concerning Khai B., born in late September 2022, who was taken into protective custody on October 6, 2022. The petition alleged neglect due to an environment injurious to his welfare based upon Mother's failure to correct conditions that resulted in a prior adjudication of unfitness and exposure to substance abuse.

¶ 6      On February 7, 2022, an adjudicatory order was entered finding that Aiden M. and Sophia M. were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)) and that said neglect was inflicted by Mother. On January 23, 2023, an adjudicatory order was entered finding that Khai B. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (*id.*) and that said neglect was inflicted by Mother.

¶ 7      On October 2, 2024, the State filed a motion seeking a finding of unfitness and termination of Mother's parental rights as to each minor. The motion alleged that Mother was unfit due to her

failure to make reasonable progress and efforts towards the return of the minors during the nine-month period of January 1, 2024, to October 1, 2024.

¶ 8     On March 24, 2025, a fitness hearing as to all three minors took place. At the hearing, Mother stipulated to unfitness. When questioned by the trial court regarding the stipulation, Mother stated that she understood the allegations and all relevant rights. The trial court found Mother to be unfit as to the allegation of neglect of all three minors based on her stipulation.

¶ 9     On June 30, 2025, a hearing as to the best interest of the three minors was held. The State failed to present any evidence at the hearing aside from the best-interest report filed on June 18, 2025. The State reported to the trial court, "I don't have any evidence, Your Honor. The report was filed June 18th. So I don't have anything additional." The State did not call any witness and solely relied on the best-interest report. Mother was not allowed the opportunity to object to the evidence. Further, the trial court did not take judicial notice of the best-interest report.

¶ 10    Mother testified on her own behalf regarding the services she completed. Mother stated that she completed all DCFS services apart from the substance abuse course, but she was participating in a different substance abuse course. She further testified that she believed it was in her children's best interest that her rights are not terminated as she believed she was able to provide them with a good home. Mother testified that she loved her children. At the conclusion of the evidence, the trial court found it was in the minors' best interest that Mother's rights be terminated. Mother timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, Mother urges this court to reverse the trial court's finding that it was in the minors' best interest that her parental rights be terminated. The State argues that the trial court properly found it in the minors' best interests to terminate Mother's parental rights, even though

3

the State presented no testimony, because the best-interests report was in the court file and was considered by the trial court without objection. For the reasons that follow, we agree with Mother and reverse.

¶ 13    Termination of parental rights proceedings are governed by the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2024)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2024)). *In re D.T.*, 212 Ill. 2d 347, 352 (2004). A petition to terminate parental rights is filed under section 2-29 of the Juvenile Court Act, which delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(2) (West 2024). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). 705 ILCS 405/2-29(2), (4) (West 2024); *In re J.L.*, 236 Ill. 2d 329, 337 (2010). If the court finds that the parent is unfit, the matter proceeds to a second hearing, at which the State must prove by a preponderance of the evidence that termination of parental rights is in the best interests of the child. 705 ILCS 405/2-29(2) (West 2024); *In re D.T.*, 212 Ill. 2d at 352. Here, because unfitness was stipulated to, only the best-interest stage is at issue.

¶ 14    Once the trial court finds a parent unfit, the focus shifts to the child. *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 73. The parent's interest in maintaining a relationship with the child "must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d at 364.

¶ 15    In deciding whether termination of parental rights is in the child's best interest, the trial court must consider the following statutory factors: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural, and religious background and ties; (4) the child's sense of attachment; (5) the child's wishes; (6) the child's community ties; (7) the need for permanence and stability and the continuity of the child's

4

relationships with parental figures, siblings, and other family members; (8) the uniqueness of each child and family; (9) the risks inherent in substitute care; and (10) the preferences of the individuals available to provide care. 705 ILCS 405/1-3(4.05) (West 2024). Although the court must consider all applicable statutory factors, it is not required to refer to each individual factor in rendering its decision. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. The court may also consider the likelihood of the child being adopted. *In re Za. G.*, 2023 IL App (4th) 220793, ¶ 54.

¶ 16    In applying these factors, the trial court is constrained by the requirement that its decision be solely drawn from the evidence properly admitted. *In re J.P.*, 316 Ill. App. 3d 652, 662 (2000). "A trial court's determination of whether a parent is unfit or whether the termination of parental rights is in the child's best interest must be based only on evidence properly admitted during the termination-of-parental-rights proceedings." *Id.*

¶ 17    During the best-interest phase, the State has the burden of proving by a preponderance of the evidence that it is in the best interest of the child to terminate the parent-child relationship. *In re D.W.*, 214 Ill. 2d 289, 315 (2005). The rules of evidence applicable in the best-interest portion, including the extent to which evidence may include hearsay or judicially noticed materials, vary among Illinois appellate districts. The Fourth District, as articulated in *In re Jay. H.*, 395 Ill. App. 3d 1063 (2009), views the dispositional hearing under the Juvenile Court Act and the best-interest hearing under the Adoption Act as functional equivalents, such that the formal rules of evidence do not apply to either proceeding. *Id.* at 1070. The Fourth District emphasized that both hearings share the same primary objective, determining what action is in the child's best interest, and concluded that "at both second-step hearings, all evidence helpful (in the trial court's judgment) in determining the questions before the court may be admitted and may be relied upon to the extent of its probative value, even though that evidence would not be admissible in a

proceeding where the formal rules of evidence applied." *Id.* at 1069-70. Consistent with this approach, the Fourth District approved the trial court's taking judicial notice of orders, reports, and records in *Jay. H.*, reasoning that such documents were probative of the best-interest determination. *Id.* at 1071.

¶ 18 On the other hand, the First District in *In re J.B.*, 346 Ill. App. 3d 77 (2004), held that neither section 2-21(5)(iv)(B) nor section 2-22(1) of the Juvenile Court Act authorizes the admission of hearsay testimony in termination proceedings and reaffirmed that section 2-18(1) expressly requires application of the civil rules of evidence. *Id.* at 80-81. The First District in *In re Ca. B.*, 2019 IL App (1st) 181024, acknowledged that the Fourth District's view of applying the same evidentiary rules in the initial dispositional hearing and best-interests hearing has merit, but noted that prior First District precedent reached a different conclusion, holding that the rules of evidence applied in civil cases applies to the best-interest phase while the rules of evidence are relaxed, pursuant to the Juvenile Court Act, for the earlier dispositional stage. *Id.* ¶¶ 60-61; *In re Jay. H.*, 395 Ill. App. 3d at 1071; *In re J.B.*, 346 Ill. App. 3d 77. The *Ca. B.* court recognized the need for consistency in the rules of evidence but declined to definitively resolve the question. *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 61.

¶ 19 Because no judicial notice was taken in this case, we need not decide which standard controls. Under either the First or Fourth District's standard, the State was still required to present some admissible evidence addressing the statutory best-interest factors. The best-interest report was neither offered nor admitted into evidence, and the court did not take judicial notice of the report. Mother was not given the opportunity to object to the report or cross-examine any witness familiar with its contents. Thus, no admissible evidence supported the trial court's determination.

6

¶ 20    The State argues that the trial court's finding is not against the manifest weight of the evidence and, in support of this position, cites *In re K.P.*, 2020 IL App (3d) 190709. There, neither the caseworker nor the caregivers testified at the best-interests hearing, but the best-interests report was on file and considered by the court without objection. *Id.* ¶¶ 44-45. As a result, any objection the mother may have raised regarding the absence of live testimony was deemed waived. *Id.* The State further notes that hearsay admitted without objection is to be considered and given its natural probative effect. *Id.*; see *People v. Akis*, 63 Ill. 2d 296, 299 (1976).

¶ 21    However, *K.P.* is distinguishable from the present case. In *K.P.*, on appeal, the respondent did not challenge the best-interest report that was affirmatively considered by the trial court. *In re K.P.*, 2020 IL App (3d) 190709, ¶ 29. Additionally, the trial court took judicial notice of documents regarding the respondent. *Id.* Here, by contrast, the report was not offered or admitted into evidence, nor was any foundation laid for its consideration, and Mother is challenging it on appeal. Mother was not given the opportunity to object or challenge the contents of the report at the best-interest hearing, and the trial court relied on it as the sole evidentiary basis for its decision.

¶ 22    We find *In re C.D.*, 2020 IL App (3d) 190176, instructive. There, the Third District Appellate Court held that reliance on unadmitted evidence at the unfitness stage constituted a reversible error. *Id*. The Third District determined that because the report was neither supported by testimony nor properly admitted, its contents remained unsubmitted and unvetted. Accordingly, the trial court could not rely on them. *Id.* ¶ 30. Similarly, here the State failed to meet its burden of proving by a preponderance of the evidence that termination of Mother's parental rights was in the child's best interests, as no admissible evidence was presented at the best-interest hearing. *In re J.P.*, 316 Ill. App. 3d at 662.

7

¶ 23 Succinctly stated, in the case before us, the report was never offered into evidence, no witness testified to its contents, Mother was given no opportunity to challenge or rebut the assertions contained within it, no judicial notice was taken, and no additional evidence was submitted by the State. As in *C.D.*, the trial court's best-interest finding rested on material that was never subjected to evidentiary scrutiny. Where the State offered no competent evidence at the best-interest stage, the State failed to meet its statutory burden. As a result, the trial court's finding cannot stand. *In re C.D.*, 2020 IL App (3d) 190176, ¶ 30. Accordingly, the trial court's order terminating Mother's parental rights must be reversed.

¶ 24                                III. CONCLUSION

¶ 25 For the foregoing reasons, the June 30, 2025, judgment of the circuit court of Piatt County finding that termination of Mother's parental rights was in the minors' best interests is reversed.


¶ 26 Reversed.

8