NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230743-U

NOS. 4-23-0743, 4-23-0744 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 25, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.S. and K.E., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Rock Island County |
| Petitioner-Appellee, | ) | Nos. 20JA98 |
| v. | ) | 20JA99 |
| Joseph E., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Theodore G. Kutsunis, |
| | ) | Judge Presiding. |

---

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Turner and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, holding (1) it lacks jurisdiction to address Father's appeal from the adjudication and dispositional orders and (2) the trial court's finding of unfitness and its termination of Father's parental rights were not against the manifest weight of the evidence.

¶ 2     On August 21, 2023, the trial court entered an order terminating the parental rights of respondent, Joseph E. (Father), to his minor children, K.S. (born October 2018) and K.E. (born October 2019). On appeal, Father argues the dispositional order should be overturned and further the court erred in terminating his parental rights. We lack jurisdiction to consider Father's first contention of error and otherwise affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Case Opening

¶ 5             On July 29, 2020, the State filed petitions for adjudication of wardship and temporary custody alleging K.S., K.E., and another minor (who is not part of this appeal) were neglected minors under section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2020)). The petition alleged on July 17, 2020, the minors' mother, Alexis E., who is not a party to this appeal, submitted a drug test "which returned positive for Amphetamine and Methamphetamine." It further alleged that, on July 27, 2020, Alexis E. was found unresponsive on the floor with "what appeared to be fresh needle injection marks." K.S. was found sleeping next to Alexis E. with broken glass underneath K.S. Following a hearing, the trial court found there was probable cause to believe the minors were neglected and placed temporary guardianship and custody of the minors with the Illinois Department of Children and Family Services (DCFS).

¶ 6             At a hearing on October 9, 2020, Alexis E. stipulated to the allegations contained in the petitions for adjudication of wardship. Father was present with counsel at the hearing. When asked whether Father was stipulating to the petitions, counsel replied, "Your Honor, my client was in custody when these events took place, so he has no firsthand knowledge of those, so he would just take no position."

¶ 7             On November 13, 2020, the trial court conducted an adjudicatory hearing. Father was again present with counsel. The court entered a written order finding the minors neglected pursuant to Alexis E.'s stipulation. The court made the minors wards of the court and continued guardianship and custody with DCFS.

¶ 8             On February 11, 2023, the trial court changed the permanency goal to substitute care pending termination of Father's parental rights.

¶ 9    On April 7, 2022, the State filed petitions to terminate Father's parental rights. The petitions alleged Father was an unfit parent in that (1) he failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)), (2) he failed to make reasonable efforts to correct the conditions that were the basis for the minors removal from his care during a nine-month period after the minors were adjudicated neglected, namely, the period of July 1, 2021, to April 1, 2022 (750 ILCS 50/1(D)(m)(i) (West 2022)), and (3) he failed to make reasonable progress toward the return of the minors to his care during a nine-month period after the minors were adjudicated neglected, namely, the period of July 1, 2021, to April 1, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2022)). Alexis E. signed consents to adoption during the pendency of the proceedings.

¶ 10    On November 21, 2022, Father filed a motion to vacate the adjudicatory and dispositional orders. Father argued "the allegations of the petition concern events that occurred" while he was incarcerated. Moreover, the trial court's dispositional orders were based "solely on the stipulation of the mother." As such, Father argued, the petitions "ma[de] zero factual statements about [Father]. There is no fact contained in the petition from which the court could reasonably derive the conclusion that [Father] is unable to care for the minor[s] and, at this stage, [Father] was no longer incarcerated." Father further asserted the court's written rulings "do not comport" with section 2-27(1) of the Juvenile Court Act (705 ILCS 405/2-27(1) (West 2020)).

¶ 11    The trial court conducted a hearing on Father's motion to vacate on December 7, 2022. After hearing argument from the parties, the court denied Father's motion. The court noted at the time of the filing of the adjudication petition, Father was "a putative father" and "acknowledged that he was the father on the date of the dispositional hearing." The court further noted Father's participation in the integrated assessment prior to the dispositional hearing.

Moreover, Father was admonished of his right to appeal the dispositional order, and "he was present in open court when that decision of this Court was made."

¶ 12                                B. Fitness Hearing

¶ 13        On May 30, 2023, the trial court conducted the fitness hearing. Father was not present. The State presented the testimony of Katelynn Ramirez, a caseworker with Bethany for Children & Families. Ramirez testified she had been the minors' caseworker since January 2021. According to Ramirez, the minors came into care after Father was pulled over by police and "there was needles found in the car and prescription medication that was not prescribed to him." Alexis E. "at one point in time was found being the primary caregiver of [the minors] and had been passed out."

¶ 14        Father's service plan required him to complete substance abuse services, parenting education, and mental health services and maintain appropriate housing and employment. Ramirez indicated Father missed several drug drops. When asked about the frequency of Father's required drug drops, Ramirez could not "recall the specifics." When asked whether a document would refresh her memory on the subject, Ramirez stated it would. Ramirez indicated she did not have the specific document with her, and over objection, the trial court allowed Ramirez to view the document on counsel for DCFS's computer. After Ramirez's memory was refreshed, counsel retrieved the computer and Ramirez indicated from January 2022 to March 2022, Father did not attend requested drug drops. Ramirez further testified Father never completed the required psychiatric evaluation.

¶ 15        Regarding visitation, Father's visits were suspended by the agency in November 2021 "until he met with his assigned caseworker due to seven missed visits in a row." Ramirez noted Father did not have scheduled visits with the minors from November 2021 until May 2022,

when he met with Ramirez. Prior to the agency's decision to suspend visits, Father had been "sporadic with his attendance." On cross-examination, Ramirez acknowledged Father completed parenting classes in July 2022.

¶ 16        After the State's case-in-chief, Father's counsel moved for a continuance. Citing *In re C.J.*, 272 Ill. App. 3d 461, 650 N.E. 2d 290 (1995), counsel argued "it's a due process violation to deny a parent a right to participate in a termination hearing—not saying that you necessarily denied him the right, but the continuance was denied earlier." Counsel requested a "recess until we can have testimony from [Father] or otherwise protect his due process rights by creating another method of participation for [Father]." The State objected to a continuance, noting "this case has been continued and continued and continued over the past year" and that Father "had every opportunity to be here." The State further highlighted Father's lack of communication with his own counsel regarding his absence at the fitness hearing. The trial court denied counsel's request for a continuance. Father's counsel rested.

¶ 17        The trial court found the State proved by clear and convincing evidence Father failed to make both reasonable efforts and reasonable progress during the time period of July 1, 2021, to April 1, 2022. Specifically, the court did not "see any evidence at all that by the time April 1, 2022, came around there was any indication that there was efforts being made." Further, the court noted Father "may have been assessed for substance abuse, but he didn't follow through with the recommended aftercare, which is all part and parcel to what he is supposed to do," missed drug drops, was not cooperating with the agency, and began using methamphetamine again.

¶ 18                                C. Best Interests Hearing

¶ 19          On August 21, 2023, the trial court conducted the best interests hearing. The court took judicial notice of the best interests report without objection. The best interests report indicated the minors had been in foster care since July 2020. The minors' "safety, educational, developmental, well-being *** and medical needs have been consistently met by their current foster parents." The minors were well bonded to their foster parents and referred to them as "Mom" and "Dad." Conversely, the report noted the minors did not have a close relationship with Father due to his "failure to ensure that [the minors'] social, emotional, and physical well-being was attended by not completing the recommended services and having inconsistent visitation."

¶ 20          Foster parent, Michael K., testified the minors had been in his care since September 2020. Michael K. indicated he and his wife, Tiffany K., were willing to provide permanency for the minors through adoption. On cross-examination, Michael K. acknowledged the minors "were happy" when they would have scheduled visits with Father.

¶ 21          Following arguments, the trial court found termination of Father's parental rights was in the minors' best interests. The court noted the minors had been in the care of the foster parents for nearly three years. Specifically, the court concluded, "[T]he nature and the length of the relationship that [the minors] have with their foster parents, at this point is much more in their best interest to continue, that a change in placement I believe would have an emotional and psychological effect to the negative to these [minors]."

¶ 22          On August 28, 2023, Father filed a timely notice of appeal. This court docketed Father's appeals in Rock Island County case No. 20-JA-98 as appellate court case No. 4-23-0743 (K.S.'s case) and Rock Island County case No. 20-JA-99 as appellate court case No. 4-23-0744

(K.E.'s case). On October 24, 2023, this court granted Father's motion to consolidate the appeals.

¶ 23                        II. ANALYSIS

¶ 24                  A. Adjudicatory and Dispositional Findings

¶ 25          On appeal, Father first contends the adjudicatory and dispositional findings "should both be overturned." The State asserts this court lacks jurisdiction to address Father's argument.

¶ 26          This court lacks jurisdiction over the neglect findings. The dispositional order on the challenged neglect finding was entered in November 2020. This is a final and appealable order. See *In re Leona W.*, 228 Ill. 2d 439, 456, 888 N.E.2d 72, 81 (2008). Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) requires that to challenge those findings, notice of appeal must have been filed within 30 days of the order's entry. Compliance with Rule 303(a)(1) is "mandatory and jurisdictional." (Internal quotation marks omitted.) *In re C.S., Jr.*, 294 Ill. App. 3d 780, 787, 691 N.E.2d 161, 165 (1998). "Dispositional orders from juvenile court are generally final and appealable." *In re D.D.*, 212 Ill. 2d 410, 418, 819 N.E.2d 300, 304 (2004). Where an appellant fails to file an appeal within 30 days after the entry of a dispositional order, this court "ha[s] no jurisdiction to go back and reconsider whether [the order] was proper when made." *Leona W.*, 228 Ill. 2d at 457. Here, Father failed to file an appeal within 30 days of the entry of the order. Rather, nearly two years later, the day before the scheduled fitness hearing, Father filed a motion to vacate the adjudicatory and dispositional findings. The trial court denied that motion. Father then filed a petition for leave to appeal under Illinois Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020), which we subsequently denied. See *In re K.S. & K.E.*, No. 4-23-0067 (2023) (unpublished order). At the time of the entry of the dispositional order, Father

was admonished in open court of his appeal rights. In failing to timely appeal the dispositional order, Father forfeited his opportunity to seek review of any claimed errors in the adjudicatory and dispositional proceedings. Accordingly, because of Father's failure to timely appeal the trial court's dispositional order, this court lacks jurisdiction to review it. *Leona W.*, 228 Ill. 2d at 456.

¶ 27                                B. Fitness Hearing

¶ 28                                1. *Procedural Due Process*

¶ 29        We initially address Father's argument the trial court violated his procedural due process rights when it denied his motion to continue and proceeded with the unfitness hearing in his absence.

¶ 30        The right of natural parents to the care and custody of their children is a fundamental liberty interest protected by the due process clause of the fourteenth amendment to the United States Constitution. U.S. Const., amend. XIV; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). "Due process is not a fixed hypertechnical mold, but a flexible concept that affords procedural protections as demanded by specific situations." *In re J.S.*, 2018 IL App (2d) 180001, ¶ 18, 102 N.E.3d 250. Due process claims arising out of parental termination cases are analyzed by balancing the three factors outlined by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): "(1) [t]he private interest affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, which includes the function involved as well as the fiscal and administrative costs of any additional or substitute procedures." *J.S.*, 2018 IL App (2d) 180001, ¶ 18.

¶ 31        Applying these factors, the first favors Father. He clearly had an important interest in the outcome of the termination proceedings, specifically, his interest in maintaining a

parental relationship with the minors. See *In re D.R.*, 307 Ill. App. 3d 478, 483, 718 N.E.2d 664, 667 (1999).

¶ 32    The second factor requires us to look to the procedures employed by the trial court and assess the potential they erroneously deprived Father of his parental relationship with the minors. We note while a parent has a right to be present at termination proceedings, parental presence is not mandatory. *In re M.R.*, 316 Ill. App. 3d 399, 402, 736 N.E.2d 167, 169 (2000). While Father was not present in court, he was represented by his attorney, who cross-examined the State's witness and argued vigorously on his behalf. As the State notes, "this case was continued multiple times." Indeed, the record reflects the State filed the petition to terminate parental rights on April 7, 2022. Due to various continuances, including a petition to intervene filed by the paternal grandfather, Father's motion to vacate the adjudicatory and dispositional order, and inclement weather, the court did not proceed with the fitness hearing until May 30, 2023. Undoubtedly, the court made efforts to afford Father the opportunity to participate in the termination proceedings. In light of the strength of the evidence presented against Father, it is highly unlikely that his presence would have made any difference in the outcome. The State presented evidence that Father had not been consistently engaging in substance abuse services or drug drops, completing psychiatric evaluation, or participating in visitation from July 1, 2021, to April 1, 2022. Thus, while Father might have been deprived of the opportunity to testify, it was through his own failures and not due to any error in court procedure.

¶ 33    As to the third factor, it is in the government's interest to adjudicate the matter as expeditiously as possible. *C.J.*, 272 Ill. App. 3d at 466. "A delay in these types of proceedings 'imposes a serious cost on the functions of government, as well as an intangible cost to the lives of the children involved.' " *J.S.*, 2018 IL App (2d) 180001, ¶ 25 (quoting *M.R.*, 316 Ill. App. 3d

at 403). At the time of the fitness proceedings, the minors had been in foster care for nearly three years. Without a doubt, the government's interest weighed against further delay.

¶ 34       Therefore, based on the foregoing reasons, the trial court did not violate Father's procedural due process rights.

¶ 35                                      2. *Unfitness Findings*

¶ 36       We next address Father's argument the trial court erred in finding him unfit.

¶ 37       Initially, we note while Father acknowledges the appropriate standard of review in termination proceedings is the manifest weight of the evidence standard, he invites us to adopt a *de novo* standard of review. Father urges us to "expand on *dicta*" from our supreme court in *In re D.T.*, 212 Ill. 2d 347, 357, 818 N.E.2d 1214, 1223 (2004), stating, "a trial judge's ruling on the ultimate issue at a best-interests hearing—whether the parent-child relationship should be permanently and completely severed—is plainly not the type of ruling to which the highly deferential abuse of discretion review traditionally applies." The State asserts our supreme court never "suggested that the manifest weight of the evidence was not the appropriate standard of review." Instead, the State notes *D.T.* addressed the issue of what standard of proof was required at the best interests stage of termination proceedings. *D.T.*, 212 Ill. 2d at 355-356. We agree with the State. Accordingly, we decline Father's invitation to adopt a new standard of review for termination proceedings.

¶ 38       Termination of parental rights under the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1, 966 N.E.2d 1107. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340,

354, 830 N.E.2d 508, 516 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)), a parent may be found unfit if he fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2022).

¶ 39　　　　We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68, 162 N.E.3d 454. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29, 217 N.E.3d 341.

¶ 40　　　　In his brief, Father asserts "there were numerous evidentiary errors at this proceeding. That violated the rules of evidence." Specifically, Father takes issue with Ramirez being provided a computer with documentation on it to refresh her recollection during the State's examination. The State asserts this was the proper method of refreshing the witness's memory. We agree. It is well-established that "the manner and mode of refreshing a witness' memory rests within the discretion of the trial court." *People v. Shatner*, 174 Ill. 2d 133, 153, 673 N.E.2d 258, 267 (1996). "It has long been the law of Illinois that a witness may refresh his recollection from virtually any source." *People v. Pappas*, 66 Ill. App. 3d 360, 374, 383 N.E.2d 1190, 1200 (1978).

Indeed, a document used to refresh a witness's memory "need not have been made by the witness nor be independently admissible into evidence, provided that, after inspecting it, the witness can speak to the facts from [her] own recollection." *People v. Van Dyk*, 40 Ill. App. 3d 275, 279, 352 N.E.2d 327, 330 (1976)). After the witness's recollection has been refreshed, the witness then testifies from his independent recollection. *Pappas*, 66 Ill. App. 3d at 374. Here, Ramirez testified she could not remember the specifics of the frequency of Father's required drug drops. The State asked Ramirez if there was a document that would refresh her memory, and she indicated in the affirmative. That document was unavailable in printed form but was available on DCFS counsel's computer. The record indicates after Ramirez refreshed her memory, the computer was removed, and she proceeded with her testimony. We find no abuse of discretion occurred.

¶ 41　　　　The State proved by clear and convincing evidence Father failed to make reasonable progress toward the return of the minors during the time period of July 1, 2021, to April 1, 2022, as alleged in the State's petition to terminate parental rights. Pursuant to Father's service plan he was to *inter alia* (1) complete random drug testing, (2) complete a substance abuse assessment and follow all recommendations, (3) complete parenting education classes, (4) complete a mental health assessment and participate in a psychiatric evaluation, (5) maintain employment, and (6) visit with the minors. At the time of the unfitness hearing, Father failed to complete multiple drug drops. Moreover, Father informed Ramirez he had relapsed and was using methamphetamine following his relapse in October 2021. Father "fell out of contact" with Ramirez until May 2022. Even though Father eventually completed parenting education classes, he did not complete those within the time period of July 1, 2021, to April 1, 2022. Additionally, Father did not complete the psychiatric evaluation as required. Further, the agency decided to

suspend Father's visitation in November 2021 due to seven missed visits in a row. Prior to October 2021, Father's attendance at such visitations had been "sporadic."

¶ 42 Father argues the trial court "erred in construing against [him] missed visits as he was not responsible for those—those visits were suspended by the agency from November 2021 to May of 2022." Father's argument is flummoxing, particularly in light of the agency's position that visitation was suspended until Father met with Ramirez, which he did not do until May 2022.

¶ 43 Based on this evidence, Father did not "substantially fulfill his *** obligations under the service plan" and therefore did not make reasonable progress toward the return of the minors to his care. 750 ILCS 50/1(D)(m)(ii) (West 2022). "As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493, 797 N.E.2d 1112, 1120 (2003).

¶ 44                                C. Best Interests Findings

¶ 45 Father next argues the trial court erred in determining it was in the minors' best interests that his parental rights be terminated.

¶ 46 When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best interests determination, the

- 13 -

court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022). These factors include:

"(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19, 8 N.E.3d 1258. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961, 835 N.E.2d 908, 914 (2005).

¶ 47        Here, the trial court's best interests finding was not against the manifest weight of the evidence. The best interests report showed the minors had been in foster care since July 2020 and were thriving in their foster placement. The minors were bonded with their foster parents and referred to them as "Mom" and "Dad." The report indicated the minors' physical, mental, and emotional needs were being "consistently" met by their foster parents and Michael K. agreed to

- 14 -

provide permanency for the minors through adoption. The authors of the best interests report noted the minors did not have a close relationship with Father due to his inconsistent visitation and "failure to ensure that [the minors'] social, emotional, and physical well-being was attended by not completing recommended services."

¶ 48 All told, the record shows the minors felt loved, valued, secure, and nurtured in their current placement and supports the trial court's decision. Terminating Father's rights served the minors' best interests. The decision is neither unreasonable nor arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616. Since the evidence does not lead us clearly to the opposite conclusion, we cannot say the court's best interests determination was against the manifest weight of the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 49                                  III. CONCLUSION

¶ 50 For the reasons stated, we affirm the trial court's judgment.

¶ 51 Affirmed.